**James E. Evans**, Va. Bar No. 83866
james.evans@ftc.gov
(202) 326-2026
**Ian L. Barlow**, D.C. Bar No. 998500
ibarlow@ftc.gov
(202) 326-3120
**Federal Trade Commission**
600 Pennsylvania Ave. NW, CC-8528
Washington, DC 20580
(202) 326-3395 (fax)

**Thomas J. Syta**, Cal. Bar No. 116286
tsyta@ftc.gov
(310) 824-4343
Local Counsel
**Federal Trade Commission**
10877 Wilshire Boulevard, Suite 700
Los Angeles, CA 90024
(310) 824-4380 (fax)

**Attorneys for Plaintiff**
**Federal Trade Commission**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Federal Trade Commission,** | No. _____ |
| Plaintiff, | |
| vs. | **Complaint for Civil Penalties, Permanent Injunction and Other Relief** |
| **Aaron Michael Jones**, also known as Michael Aaron Jones, also known as Mike Jones, individually and as an owner, officer, or manager, or a *de facto* owner, officer, or manager of Allorey, Inc., Audacity LLC, Data World Technologies, Inc., Dial Soft Technologies, Inc., Digital Marketing Solutions, Inc., Local Lighthouse Corp., | |

1

Savilo Support Services, Inc., Secure Alliance Corp., Velocity Information Corp., and World Access Media;

**Houston Fraley**, individually and as an officer of Local Lighthouse Corp.;

**Tyler Hall**, individually and as an officer of Local Lighthouse Corp. and Secure Alliance Corp.;

**Kasia Kinaman**, individually and as an officer of Digital Marketing Solutions, Inc.;

**Eric Oakley**, individually and as an officer of Local Lighthouse Corp. and Velocity Information Corp.;

**Richard Paik**, individually, as an officer of Local Lighthouse Corp. and Secure Alliance Corp., and as an owner, officer, or manager, or *de facto* owner, officer, or manager of Allorey, Inc., Data World Technologies, Inc., Dial Soft Technologies, Inc., Digital Marketing Solutions, Inc., Savilo Support Services, Inc., and Velocity Information Corp.;

**Steven Stansbury**, also known as Steve Stansbury, individually and as an officer of Data World Technologies, Inc., and Dial Soft Technologies, Inc.;

**Raymund Verallo**, also known as Raymond Verallo, also known as Ray Verallo, individually and as an officer of Allorey, Inc. and Dial Soft Technologies, Inc.;

**Andrew Yoshioka**, individually and as an officer of Audacity LLC and World Access Media;

**Allorey, Inc.**, a California corporation;

**Audacity LLC**, a California limited liability company;

**Data World Technologies, Inc.**, a California corporation;

**Dial Soft Technologies, Inc.**, a former Nevada corporation;

**Digital Marketing Solutions, Inc.**, a California corporation;

**Local Lighthouse Corp.**, a California corporation;

**Savilo Support Services, Inc.**, a California corporation;

**Secure Alliance Corp.**, a California corporation;

**Velocity Information Corp.**, a former California corporation; and

**World Access Media**, a California corporation;

Defendants.

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.     The FTC brings this action under Sections 5(a), 5(m)(1)(A), 13(b), and 16(a) of the FTC Act, 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), and 56(a), and Section 6 of the Telemarketing and Consumer Fraud and Abuse Prevention Act (the

"Telemarketing Act"), 15 U.S.C. § 6105, to obtain monetary civil penalties, permanent injunctive relief, and other relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Telemarketing Sales Rule ("TSR"), as amended, 16 C.F.R. Part 310.

## INTRODUCTION

2.     From at least March 2009 to May 2016, Defendants assisted their numerous telemarketer clients in bombarding American consumers with billions of robocalls—calls delivering prerecorded messages. Defendants also assisted their clients in making calls to consumers whose telephone numbers were on the National Do Not Call ("DNC") Registry, and in spoofing caller ID information— transmitting inaccurate caller ID numbers with their calls.

3.     Defendants sold access to a certain computer-based telephone dialing platform, referred to herein as the Dialing Platform. Telephone dialing platforms allow users to use computer technology to blast out large volumes of calls. Defendants' clients used Defendants' access to the Dialing Platform to blast out billions of telemarketing robocalls, calls to consumers on the National DNC Registry, and calls with spoofed caller ID information.

4.     From at least March 2009 to July 2015, Defendants resold access to the Dialing Platform and supported their clients' use of the Dialing Platform through an enterprise of various shell companies that all operated out of shared offices on Red Hill Avenue in Orange County, California. From at least July 2015 to May 2016, most of the Defendants continued their business through another enterprise of different shell companies that operated out Defendant Jones's residence in Orange County.

5.     Defendants provided substantial assistance and support to their telemarketer clients by giving their clients access to the Dialing Platform, which allowed their clients to make billions of telemarketing robocalls, calls to

consumers on the National DNC Registry, and calls with spoofed caller ID information, which violated the TSR.

6. Defendants knew or consciously avoided knowing that their clients were making telemarketing calls that violated the TSR. Defendants knew that their clients' calls delivered pre-recorded messages, sometimes at a rate of millions of calls per day—a rate and volume of calls that could not be dialed or attended by live operators. Defendants also helped their clients turn off automated features embedded in auto-dialing software that would have prevented calls to numbers on the National Do Not Call Registry, and helped them avoid dialing numbers associated with law enforcement agencies or known class action plaintiffs.

7. Defendants' facilitation of each of their clients' illegal calls is itself a violation of the TSR. Each Defendant is liable for his, her, or its part in an enterprise that assisted unscrupulous telemarketers to subject American consumers to billions of illegal telemarketing calls.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355, and 15 U.S.C. §§ 45(a) and (m)(1)(A), 53(b), and 56(a).

9. Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1), (b)(2), (c)(1), (c)(2), and (d), and 1395(a), and 15 U.S.C. § 53(b).

## PLAINTIFF

10. The FTC is an independent agency of the United States government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108. Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

11.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violation of the FTC act and the TSR, to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C § 53(b). The FTC is also authorized to obtain civil penalties for violations of the TSR. 15 U.S.C. § 45(m)(1)(A).

## DEFENDANTS

### Corporate Defendants

12.     Defendant **Allorey, Inc.** ("Allorey") is a California corporation with its principal place of business in Orange County, California. Allorey transacts or has transacted business in this district and throughout the United States.

13.     Defendant **Audacity LLC** ("Audacity") is a California corporation with its principal place of business in Orange County, California. Audacity transacts or has transacted business in this district and throughout the United States.

14.     Defendant **Data World Technologies, Inc.** ("Data World") is a California corporation with its principal place of business in Orange County, California. Data World transacts or has transacted business in this district and throughout the United States.

15.     Defendant **Dial Soft Technologies, Inc.** ("Dial Soft") is a former Nevada corporation, the principal place of business of which was in Orange County, California. Dial Soft transacts or has transacted business in this district and throughout the United States.

16.     Defendant **Digital Marketing Solutions, Inc.** ("Digital Marketing") is a California corporation with its principal place of business in Orange County, California. Digital Marketing transacts or has transacted business in this district and throughout the United States.

17.     Defendant **Local Lighthouse Corp.** ("Local Lighthouse") is a California corporation with its principal place of business in Orange County,

California. Local Lighthouse transacts or has transacted business in this district and throughout the United States.

18.     Defendant **Savilo Support Services, Inc.** ("Savilo") is a California corporation with its principal place of business in Orange County, California. Savilo transacts or has transacted business in this district and throughout the United States.

19.     Defendant **Secure Alliance Corp.** ("Secure Alliance") is a California corporation with its principal place of business in Orange County, California. Secure Alliance transacts or has transacted business in this district and throughout the United States.

20.     Defendant **Velocity Information Corp.** ("Velocity Information") is a former California corporation, the principal place of business of which was in Orange County, California. Velocity Information transacts or has transacted business in this district and throughout the United States.

21.     Defendant **World Access Media** ("World Access") is a California corporation with its principal place of business in Orange County, California. World Access transacts or has transacted business in this district and throughout the United States.

**Individual Defendants**

22.     Defendant **Aaron Michael Jones**, also known as Michael Aaron Jones, also known as Mike Jones, is an actual or *de facto* owner, officer, or manager of each of the Corporate Defendants. At all times material to this Complaint, acting alone or in concert with others, Jones has had the authority and responsibility to prevent or correct the unlawful telemarketing practices of each of the Corporate Defendants, and has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of each of the Corporate Defendants, including the acts and practices set forth in this Complaint. Jones resides in this district and, in connection with the matters alleged herein,

transacts or has transacted business in this district and throughout the United States.

23.    Defendant **Houston Fraley** is an officer of Local Lighthouse. At all times material to this Complaint, acting alone or in concert with others, Fraley has had the authority and responsibility to prevent or correct the unlawful telemarketing practices of Local Lighthouse, and has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Local Lighthouse, including the acts and practices set forth in this Complaint. Fraley resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

24.    Defendant **Tyler Hall** is an officer of Local Lighthouse and Secure Alliance. At all times material to this Complaint, acting alone or in concert with others, Hall has had the authority and responsibility to prevent or correct the unlawful telemarketing practices of Local Lighthouse and Secure Alliance, and has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Local Lighthouse and Secure Alliance, including the acts and practices set forth in this Complaint. Hall resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

25.    Defendant **Kasia Kinaman** is an officer of Digital Marketing. At all times material to this Complaint, acting alone or in concert with others, Kinaman has had the authority and responsibility to prevent or correct the unlawful telemarketing practices of Digital Marketing, and has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Digital Marketing, including the acts and practices set forth in this Complaint. Kinaman resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

26.    Defendant **Eric Oakley** is an officer of Local Lighthouse and Velocity Information. At all times material to this Complaint, acting alone or in concert with others, Oakley has had the authority and responsibility to prevent or correct the unlawful telemarketing practices of Local Lighthouse and Velocity Information, and has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Local Lighthouse and Velocity Information, including the acts and practices set forth in this Complaint. Oakley resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

27.    Defendant **Richard Paik** is a an officer of Local Lighthouse and Secure Alliance, and an actual or *de facto* owner, officer, or manager of Allorey, Data World, Dial Soft, Digital Marketing, Savilo, and Velocity Information. At all times material to this Complaint, acting alone or in concert with others, Paik has had the authority and responsibility to prevent or correct the unlawful telemarketing practices of Local Lighthouse, Secure Alliance, Allorey, Data World, Dial Soft, Digital Marketing, Savilo, and Velocity Information, and has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Local Lighthouse, Secure Alliance, Allorey, Data World, Dial Soft, Digital Marketing, Savilo, and Velocity Information, including the acts and practices set forth in this Complaint. Paik resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

28.    Defendant **Steven Stansbury** is an officer of Data World and Dial Soft. At all times material to this Complaint, acting alone or in concert with others, Stansbury has had the authority and responsibility to prevent or correct the unlawful telemarketing practices of Data World and Dial Soft, and has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Data World and Dial Soft, including the acts and practices set forth in

this Complaint. Stansbury resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

29.     Defendant **Raymund Verallo**, also known as Raymond Verallo, is an officer of Allorey and Dial Soft. At all times material to this Complaint, acting alone or in concert with others, Verallo has had the authority and responsibility to prevent or correct the unlawful telemarketing practices of Allorey and Dial Soft, and has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Allorey and Dial Soft, including the acts and practices set forth in this Complaint. Verallo resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

30.     Defendant **Andrew Yoshioka** is an officer of Audacity and World Access. At all times material to this Complaint, acting alone or in concert with others, Yoshioka has had the authority and responsibility to prevent or correct the unlawful telemarketing practices of Audacity and World Access, and has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Audacity and World Access, including the acts and practices set forth in this Complaint. Yoshioka resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

## COMMON ENTERPRISE

31.     Defendants Allorey, Data World, Dial Soft, Digital Marketing, Local Lighthouse, Savilo, Secure Alliance, and Velocity Information (the "Red Hill Robocall Enterprise") have operated as a common enterprise while engaging in the unlawful acts and practices alleged below. From at least March 2009 to July 2015, Defendants Allorey, Data World, Dial Soft, Digital Marketing, Local Lighthouse, Savilo, Secure Alliance, Velocity Information, and all of the Individual Defendants

(the "Red Hill Robocall Enterprise Defendants") have conducted the business practices described below through the Red Hill Robocall Enterprise, an interrelated network of companies that have common beneficial ownership, *de facto* officers and managers, business functions, employees, and office locations, and that commingled funds. Because the Red Hill Robocall Enterprise operated as a common enterprise, each of the entities that comprise it is jointly and severally liable for the acts and practices of the Red Hill Robocall Enterprise. At various times material to this Complaint, each of the Individual Defendants has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of one or more the entities that comprise the Red Hill Robocall Enterprise.

32.     Defendants Audacity and World Access (the "Jones Home Robocall Enterprise") have operated as a common enterprise while engaging in the unlawful acts and practices alleged below. From at least July 2015 to May 2016, Defendants Audacity, World Access, Jones, Fraley, Hall, Stansbury, Verallo, and Yoshioka (the "Jones Home Robocall Enterprise Defendants") have conducted the business practices described below through the Jones Home Robocall Enterprise, two interrelated companies that have common beneficial ownership, *de facto* officers and managers, business functions, employees, and office locations, and that commingled funds. Because the Jones Home Robocall Enterprise operated as a common enterprise, each of the entities that comprise it is jointly and severally liable for the acts and practices of the Jones Home Robocall Enterprise. At various times material to this Complaint, Defendants Jones, Fraley, Hall, Stansbury, Verallo, and Yoshioka have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of one or more the entities that comprise the Jones Home Robocall Enterprise.

**COMMERCE**

33.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

**THE TELEMARKETING SALES RULE**

**AND THE NATIONAL DO NOT CALL REGISTRY**

34.     Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108. The FTC adopted the original TSR in 1995, extensively amended it in 2003, and amended certain provisions thereafter. 16 C.F.R. Part 310.

35.     Among other things, the 2003 amendments to the TSR established a do not call registry, maintained by the FTC (the "National DNC Registry" or "Registry"), of consumers who do not wish to receive certain types of telemarketing calls. Consumers can register their telephone numbers on the Registry without charge either through a toll-free telephone call or online at donotcall.gov.

36.     Consumers who receive telemarketing calls to their registered numbers can complain of Registry violations the same way they registered, through a toll-free telephone call or online at donotcall.gov, or by otherwise contacting law enforcement authorities.

37.     Under the TSR, a "telemarketer" is any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor. 16 C.F.R. § 310.2(cc). A "seller" means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration. *Id.* § 301.2(aa).

38.     The FTC allows sellers, telemarketers, and other permitted organizations to access the Registry online at telemarketing.donotcall.gov, to pay any required fee(s), and to download the numbers not to call.

39.     Under the TSR, an "outbound telephone call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution. 16 C.F.R. § 310.2(v).

40.     The TSR prohibits sellers and telemarketers from initiating an outbound telephone call to numbers on the Registry. 16 C.F.R. § 310.4(b)(1)(iii)(B).

41.     The TSR prohibits sellers and telemarketers from initiating an outbound telephone call to any consumer when that consumer previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered. 16 C.F.R. § 310.4(b)(1)(iii)(A).

42.     The TSR requires that sellers and telemarketers transmit or cause to be transmitted the telephone number of the telemarketer and, when made available by the telemarketer's carrier, the name of the telemarketer ("caller ID information"), to any caller identification service in use by a recipient of a telemarketing call, or transmit the customer service number of the seller on whose behalf the call is made and, when made available by the telemarketer's carrier, the name of the seller. 16 C.F.R. § 310.4(a)(8). Transmitting inaccurate caller ID information, or causing inaccurate caller ID information to be transmitted, is commonly called spoofing.

43.     As amended, effective September 1, 2009, the TSR prohibits initiating an outbound telephone call that delivers a prerecorded message to induce the purchase of any good or service unless the seller has obtained from the recipient of the call an express agreement, in writing, that evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller. 16 C.F.R. § 310.4(b)(1)(v). The express agreement must

1  include the recipient's telephone number and signature, must be obtained after a

2  clear and conspicuous disclosure that the purpose of the agreement is to authorize

3  the seller to place prerecorded calls to such person, and must be obtained without

4  requiring, directly or indirectly, that the agreement be executed as a condition of

5  purchasing any good or service. *Id.* Calls delivering prerecorded messages are

6  commonly called robocalls.

7      44.    It is a violation of the TSR for any person to provide substantial

8  assistance or support to any seller or telemarketer when that person knows or

9  consciously avoids knowing that the seller or telemarketer is engaged in any

10  practice that violates Sections 310.3(a), (c) or (d), or 310.4 of the TSR. 16 C.F.R.

11  § 310.3(b).

12      45.    Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C.

13  § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation

14  of the TSR constitutes an unfair or deceptive act or practice in or affecting

15  commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

16  **DEFENDANTS' BUSINESS ACTIVITIES**

17      46.    Defendants, at all relevant times, had exclusive rights to use, or re-sell

18  access to, the Dialing Platform for commercial purposes. Defendants, through the

19  Red Hill and Jones Home Robocall Enterprises, resold their exclusive rights to use

20  the Dialing Platform to their telemarketer clients. The Defendants also actively

21  assisted their clients in using that Dialing Platform, which their clients used to

22  make billions of telemarketing robocalls, calls to consumers whose phone numbers

23  were on the National DNC Registry, and calls with spoofed caller ID information.

24  **Background**

25  *The Dialing Platform*

26      47.    The Dialing Platform is a computer-based telephone dialing platform

27  through which users can blast out large volumes of telephone calls, including

28  robocalls. Users of the Dialing Platform can "spoof" the caller ID that accompanies

the calls—that is, they can select any 10-digit phone number they want to appear as the caller ID number that accompanies calls made using the platform.

48.    The Dialing Platform was created by and is owned by nonparties to this lawsuit, referred to herein as the Dialing Platform Provider.

49.    Mike Jones first met the CEO of the Dialing Platform Provider in or about the year 2001, when Jones's telemarketing company Sound Media Group, Inc. ("Sound Media") became a client of the Dialing Platform Provider.

50.    In or about the year 2005, Jones and the CEO of the Dialing Platform Provider formed an agreement that most, if not all telemarketing calls through the Dialing Platform would flow through Jones as a reseller. The Dialing Platform Provider would contract directly only with non-commercial clients, such as schools and political campaigns seeking to make informational or political calls.

51.    Even before becoming the primary reseller of the Dialing Platform for telemarketing purposes, but certainly since then, Jones has operated through numerous corporate identities, in concert with numerous business associates.

*The Auto Warranty Enterprise*

52.    From late 2006 through early 2008, Jones's associates incorporated a number of now defunct companies that functioned together as an enterprise principally engaged in lead generation, through robocalls and other telemarketing, for sellers of extended auto warranties (the "Auto Warranty Enterprise").

53.    Jones was not formally named as an officer of any of the Auto Warranty Enterprise companies, but Jones's late wife owned several of them, and Jones has admitted to having control over others.

54.    Each of the Individual Defendants except Andrew Yoshioka first worked with Jones in the Auto Warranty Enterprise. Jones brought in Steve Stansbury and also hired Houston Fraley. One of Jones's partners recruited Eric Oakley. Oakley brought in Richard Paik to become the Enterprise's accountant.

1  And at various points the Enterprise also hired Ray Verallo, Tyler Hall, and Kasia

2  Kinaman.

3    55. The Auto Warranty Enterprise conducted business out of offices at

4  15991 Red Hill Avenue, in Tustin (Orange County), California.

5    56. In 2009 the Auto Warranty Enterprise became embroiled in litigation

6  over its telemarketing practices. First, in April 2009, Verizon Wireless sued several

7  of Jones's then-clients, alleging that they made robocalls and other calls in

8  violation of the Telephone Consumer Protection Act ("TCPA"). Then in May 2009,

9  the State of Texas sued two of the Auto Warranty Enterprise companies, alleging

10  that they also made robocalls and other calls in violation of the TCPA. Texas later

11  amended its complaint to add Jones as an individual defendant. Finally, in June

12  2009, AT&T named two of the Auto Warranty Enterprise companies as defendants

13  in yet another TCPA suit, again alleging that the defendants made robocalls.

14  **The Red Hill Robocall Enterprise**

15    57. As the activities of the Auto Warranty Enterprise ground to a halt

16  under scrutiny from government and private plaintiffs, Mike Jones and his

17  associates, Richard Paik, Eric Oakley, Houston Fraley, Ray Verallo, Tyler Hall,

18  Kasia Kinaman, and Steve Stansbury, moved on to a new venture: the Red Hill

19  Robocall Enterprise. Defendants operated the Red Hill Robocall Enterprise from at

20  least March 2009 to July 2015.

21    *— 2009: Savilo and Data World Formed —*

22    58. The Red Hill Robocall Enterprise began when Jones's late wife

23  incorporated Savilo in March 2009. Jones's late wife was the CEO, secretary, CFO,

24  sole director, and registered agent of Savilo as of at least March 2013. Paik

25  submitted forms to the California Secretary of State as Savilo's controller and

26  signed contracts as its CFO.

27

28

59.     Savilo's registered address is 15991 Red Hill Avenue, Suite 202—the Auto Warranty Enterprise's former offices. Savilo later conducted business out of 2975 Red Hill Avenue, Suite 100, in Costa Mesa (Orange County), California.

60.     Savilo served as the initial corporate face of the Red Hill Robocall Enterprise, taking over as Jones and his associates phased out the Auto Warranty Enterprise. Savilo resold and supported access to the Dialing Platform to clients who used it to make robocalls and other telemarketing calls to consumers. These robocalls pitched home security systems, among other goods and services. Savilo's clients paid in advance for Dialing Platform usage in increments of minutes of calling time. All of the individuals working for the enterprise were employees of Savilo, and many used @savilo.com e-mail addresses.

61.     Stansbury incorporated Data World in June 2009. Stansbury was the CEO, secretary, CFO, sole director, and registered agent of Data World as of at least March 2013. Paik submitted forms to the California Secretary of State as Data World's controller.

62.     Data World's registered address is 2701 Harbor Boulevard, Suite E2-204, in Costa Mesa. This address was formerly an AIM Mail Center. Stansbury, or another Jones associate, rented mailbox 204 at this address in Data World's name. Data World actually conducted business out of 15991 Red Hill Avenue, Suite 202, and later out of 2975 Red Hill Avenue, Suite 100.

63.     Initially, all of the Red Hill Robocall Enterprise's telemarketer clients received access to the Dialing Platform through Data World's account. While the Enterprise's clients generally paid Savilo for Dialing Platform access, the Enterprise funneled the Dialing Platform Provider's share of the proceeds through Data World. Data World paid the Dialing Platform Provider for the Enterprise's aggregate calling time, ensuring that the Dialing Platform would be available for the Enterprise's clients to make robocalls and other telemarketing calls to

consumers. In August 2012, Data World and the Dialing Platform Provider formalized their relationship in a contract.

64.    Data World also engaged in another line of business—procuring and selling dialing lists and other consumer data to telemarketers and sellers. Many of Data World's consumer data clients also purchased access to the Dialing Platform through the Red Hill Robocall Enterprise, but some bought dialing lists and consumer data to use on other dialing platforms.

*— 2010: Velocity Information Formed —*

65.    Oakley incorporated Velocity Information in September 2010. Oakley was the CEO, secretary, CFO, and sole director of Velocity Information as of at least July 2011.

66.    Velocity Information's registered address is 2973 Harbor Boulevard, Suite 263, in Costa Mesa. This address is a UPS Store. Oakley, or another Jones associate, rented mailbox 263 at this address in Velocity Information's name. Velocity Information actually conducted business out of 15991 Red Hill Avenue, Suite 202, and later out of 2975 Red Hill Avenue, Suite 100.

67.    Velocity Information served as another conduit to move money between the Red Hill Robocall Enterprise's telemarketer clients and the Dialing Platform Provider, although Velocity Information did not have a written contract with the Dialing Platform Provider. Velocity Information received prepayment for calling time from the Enterprise's clients and remitted the Dialing Platform Provider's share to the Dialing Platform Provider, generally through Data World, to keep the Enterprise's clients' robocalling and telemarketing operations going.

68.    On January 17, 2012, Oakley dissolved Velocity Information.

69.    In March 2012, a private plaintiff sued Velocity Information alleging that Velocity Information made robocalls in violation of the TCPA.

*— 2011: Local Lighthouse and Allorey Formed —*

70.    Oakley incorporated Local Lighthouse in March 2011. Oakley is the CEO and a director, and Paik is the Secretary, CFO, and a director of Local Lighthouse as of at least July 2015. Jones also has an ownership interest in Local Lighthouse.

71.    Local Lighthouse's original registered address was 13681 Newport Avenue, Suite 8513, in Tustin. That address is a UPS Store. Oakley, or another Jones associate, rented mailbox [8-]513 at this address in Local Lighthouse's name. Local Lighthouse actually conducted business out of 15991 Red Hill Avenue, Suite 202, and later out of 2975 Red Hill Avenue, Suite 100, which is now its registered address.

72.    Local Lighthouse represented a new business venture for the Red Hill Robocall Enterprise. Local Lighthouse sold search engine optimization ("SEO") and related services meant to increase the exposure of websites on the internet. Local Lighthouse telemarketed its services through robocalls it made via the Dialing Platform, through Data World's—and later Dial Soft's—Dialing Platform accounts. Thus while Local Lighthouse did not initially engage in the Dialing Platform resale and support business of the Red Hill Robocall Enterprise, it became a major internal customer of the Enterprise's services. And, later in Local Lighthouse's existence, it did enter into the Dialing Platform resale business.

73.    Yoshioka first worked with the other Individual Defendants at Local Lighthouse in the summer of 2011, though he did not work for the Red Hill Robocall Enterprise on a permanent basis until May of 2013. Starting in May 2013, Yoshioka first worked for Local Lighthouse and then Secure Alliance before working for his own companies, Audacity and World Access.

74.    Throughout 2015, numerous private plaintiffs sued Local Lighthouse in at least six putative class actions, each alleging that Local Lighthouse made robocalls in violation of the TCPA. In September 2015, Google sued Local

Lighthouse, alleging several counts based on allegations that Local Lighthouse impersonates Google in its telemarketing.

75.    Verallo incorporated Allorey in September 2011. Allorey is an anagram of Verallo, swapping the "v" for a "y." Verallo is the CEO, Secretary, CFO, sole director, and registered agent of Allorey as of at least December 2013.

76.    Allorey's registered address is 2312 Park Avenue, Suite 123, in Tustin. That address is a UPS Store. Verallo rented mailbox 123 at that address in Allorey's name. Allorey actually conducted business out of 15991 Red Hill Avenue, Suite 202, and later out of 2975 Red Hill Avenue, Suite 100.

77.    In addition to Allorey's role in the business of the Red Hill Robocall Enterprise, discussed below in paragraph 79, Allorey also paid many of Jones's personal expenses. Paik arranged these payments at Jones's request.

78.    As Local Lighthouse's search engine optimization business grew through 2011, it replaced Savilo as the corporate nucleus of the Red Hill Robocall Enterprise. All of the individuals working for the Enterprise became employees of Local Lighthouse, and many used @locallighthouse.com e-mail addresses. Local Lighthouse paid all of the Individual Defendants, and it provided office space, computers, and supplies to the Red Hill Robocall Enterprise. Paik continued to provide accounting services and corporate governance for the entire Enterprise.

79.    At the same time, Allorey began to emerge as the corporate face of the Red Hill Robocall Enterprise's business reselling access to and assisting with use of the Dialing Platform. The Enterprise's telemarketer clients paid Allorey for access to the Dialing Platform, and Allorey paid the Dialing Platform Provider its fees, although Allorey did not have any contractual relationships with the Dialing Platform Provider. By moving money between the Enterprise's clients and the Dialing Platform Provider, Allorey allowed the Enterprise's clients to continue robocalling and making other telemarketing calls through the Dialing Platform.

80.     Savilo also continued to play a similar role to Allorey through at least 2013, and Jones continued to use an @savilo.com e-mail address through 2015. Data World continued to be the only member of the Enterprise with a written contract with the Dialing Platform Provider until Dial Soft entered into contracts with the Dialing Platform Provider in 2013. Data World also continued in the consumer data business.

*— 2012: Secure Alliance Formed —*

81.     Hall incorporated Secure Alliance in December 2012. Hall is the CEO, secretary, CFO, and sole director of Secure Alliance as of at least April 2015. Paik submitted forms to the California Secretary of State as Secure Alliance's controller.

82.     Secure Alliance's registered address is 14252 Culver Drive, Suite A457, in Irvine (Orange County), California. This address is a UPS Store. Hall rented mailbox 457 at that address in Secure Alliance's name. Secure Alliance actually conducted business out of 15991 Red Hill Avenue, Suite 202, and later out of 2975 Red Hill Avenue, Suite 100.

83.     Secure Alliance served as another Dialing Platform client-facing company, collecting revenues from telemarketers for their robocalling and other telemarketing via the Dialing Platform. Secure Alliance generally then transferred these revenues to Allorey or another company, which paid the Dialing Platform Provider in turn. Secure Alliance also procured caller ID numbers for Enterprise customers to share. Finally, pursuant to an agreement between Paik and Jones, Secure Alliance paid certain of Jones's personal expenses, including his rent.

*— 2013: Dial Soft Formed —*

84.     Dial Soft was incorporated in Nevada in June 2013. Dial Soft was never qualified to conduct business in California under California law. Verallo was the original president, secretary, treasurer, and sole director of Dial Soft; later Stansbury assumed those roles.

85.     Verallo's registered address as an officer of Dial Soft is 3843 South Bristol Street, Suite 3186, in Santa Ana (Orange County), California. This address is a UPS Store. Verallo rented mailbox [3-]186 at that address in Dial Soft's name. Dial Soft actually conducted business out of 15991 Red Hill Avenue, Suite 202, and later out of 2975 Red Hill Avenue, Suite 100.

86.     Dial Soft gradually replaced Data World and Allorey as the Dialing Platform-facing company in the Red Hill Robocall Enterprise. In June 2013, Dial Soft entered into written contracts with the Dialing Platform Provider, signed by Verallo as Dial Soft's President. Dial Soft eventually became the Enterprise's sole payer to the Dialing Platform Provider. No matter which company in the Enterprise collected the clients' payments for their robocalling and other telemarketing on the Dialing Platform, all of the money owed to the Dialing Platform Provider was funneled through Dial Soft for payment. By 2015, Dial Soft was nothing more than a pass-through for almost every dollar of Dialing Platform fees the Enterprise paid.

87.     On or about July 1, 2015, the State of Nevada revoked Dial Soft's incorporation for failure to comply with Nevada corporate law.

*— 2014: Digital Marketing Formed —*

88.     Kinaman incorporated Digital Marketing in October 2014. Digital Marketing's registered address is 23785 El Toro, Suite 163 in Lake Forest (Orange County), California. That address is a UPS Store. Kinaman rented mailbox 163 at that address in Digital Marketing's name. Digital Marketing actually conducted business out of 15991 Red Hill Avenue, Suite 202, and later out of 2975 Red Hill Avenue, Suite 100.

89.     At the beginning of 2015, Digital Marketing replaced all other companies in the Red Hill Robocall Enterprise as the primary telemarketer client-facing company. Most of the Enterprise's telemarketer clients paid Digital Marketing for their robocalling and other telemarketing on the Dialing Platform. Digital Marketing would extract the Enterprise's cut and pass the money on to Dial

Soft, which remitted almost every dollar it received from Digital Marketing to the Dialing Platform Provider. Digital Marketing also took over paying Jones's personal expenses, including credit card payments and his $25,000 monthly rent for a home in a gated community in Newport Coast (Orange County), California. Though Fraley signed the lease for the home, Jones lived in it and Kinaman's company paid the rent—all as arranged between Jones and Paik.

*— 2015 —*

90.    The Red Hill Robocall Enterprise had trouble staying together through 2015. Local Lighthouse's SEO business continued to grow in size through 2014 and 2015. Oakley and Paik managed Local Lighthouse, and Paik continued to keep the books for the rest of the Enterprise. Local Lighthouse started looking for an alternative to the Dialing Platform for its own telemarketing, as a first step to ending its dependence on other members of the Enterprise.

**The Jones Home Robocall Enterprise**

91.    At the end of June 2015, the FTC issued Civil Investigative Demands to Jones, Paik, Verallo, and the Dialing Platform Provider, among others. Eric Oakley, Richard Paik, and Local Lighthouse subsequently cut ties with the other companies in Red Hill Robocall Enterprise, and the Enterprise ended. Mike Jones and his remaining associates including, at various times, Houston Fraley, Ray Verallo, Tyler Hall, Steve Stansbury, and Andrew Yoshioka, moved on to a new venture: the Jones Home Robocall Enterprise. These individual defendants operated the Jones Home Robocall Enterprise from at least July 2015 to May 2016.

*— 2015 —*

92.    After the breakup of the Red Hill Robocall Enterprise, Jones and his associates needed new shell companies and corporate bank accounts through which to move money from their telemarketing clients to the Dialing Platform Provider. For about the next ten months, they used two companies: Audacity and World Access, which together constitute the Jones Home Robocall Enterprise. As of the

1   breakup of the Red Hill Robocall Enterprise, the Jones Home Robocall Enterprise

2   immediately replaced it, providing the same telemarketing services to the same

3   clients.

4          93.    Yoshioka and one of Jones's sons had previously organized Audacity

5   in January 2014. Audacity's registered address is a residence in Irvine where, at the

6   time of Audacity's organization, Jones and his son resided. Audacity later

7   conducted business out of Jones's subsequent residence in Newport Coast.

8          94.    At the end of 2014, Yoshioka started working for Mike Jones as his

9   assistant and began to play a role in the financial operations of the Red Hill

10  Robocall Enterprise, including moving money from the Enterprise's telemarketer

11  clients to the Dialing Platform Provider through Dial Soft.

12         95.    After the breakup of the Red Hill Robocall Enterprise, Yoshioka

13  began using Audacity's bank accounts to pay the Dialing Platform Provider.

14  Audacity immediately replaced Dial Soft as the sole payer to the Dialing Platform

15  Provider.

16         96.    Yoshioka had previously incorporated World Access in April 2015.

17  World Access's registered address is 6789 Quail Hill Parkway, Suite 828, in Irvine.

18  That address is an AIM Mail Center. Yoshioka rented mailbox 828 at that address,

19  first in his own name, and then in World Access's name. World Access actually

20  conducted business out of Jones's residence in Newport Coast.

21         97.    After World Access opened bank accounts, it eventually replaced

22  Audacity as the Jones Home Robocall Enterprise's payer to the Dialing Platform

23  Provider. In early- to mid-2016, Jones and his associates entered into talks with the

24  Dialing Platform Provider to negotiate new contracts to have World Access replace

25  Dial Soft in the 2013 contracts with the Dialing Platform Provider.

26         98.    World Access also became a lead generator for a home security

27  system marketing and installation company, referred to herein as the Home

28  Security Company. The Home Security Company had previously settled a lawsuit

brought by the United States, on behalf of the FTC, alleging that the Home Security Company had violated the TSR. Pursuant to the stipulated judgment entered in that action, the Home Security Company sent Yoshioka, on behalf of World Access, a copy of the judgment that mandated compliance with the TSR and informed him that World Access would have to comply with the judgment as a condition of doing business with the Home Security Company. Yoshioka acknowledged receipt of the judgment and confirmed he would abide by it.

99.   World Access used the Jones Home Robocall Enterprise's access to the Dialing Platform to attempt to procure leads to sell to the Home Security Company by making calls on the Dialing Platform. Thus World Access became a major internal customer of the Enterprise's services.

*— 2016 —*

100.   In the course of its ongoing investigation through mid-2016, the FTC issued additional Civil Investigative Demands, subpoenas, and other requests to the Dialing Platform Provider and the Home Security Company, among others. Subsequently, on May 4, 2016, the Dialing Platform Provider terminated its relationship with Defendants. Also on May 4, 2016, the Home Security Company terminated its relationship with World Access. With those terminations, the Jones Home Robocall Enterprise ended.

**The Enterprises' Calls**

101.   The Red Hill and Jones Home Robocall Enterprises assisted their telemarketer clients in bombarding American consumers with billions of illegal robocalls.

102.   For example, in just the first quarter 2014, the Red Hill Robocall Enterprise assisted its clients in placing more than 329 million outgoing telephone calls—mostly robocalls—to phone numbers in all fifty states and the District of Columbia. In just the first quarter of 2015, the Enterprise assisted its clients in

making more than 222 million outgoing telephone calls—again, mostly robocalls—to phone numbers in all fifty states and the District of Columbia.

103.   The Jones Home Robocall Enterprise simply assumed the operations of the Red Hill Robocall Enterprise after the latter broke up, assisting many of the same clients in placing the same kind and volume of calls.

104.   At least half of the Red Hill and Jones Home Robocall Enterprises' calls were for the purpose of soliciting sales from consumers, with a smaller percentage allegedly made to small business owners. Among the Enterprises' biggest customers were home security lead generators. The Enterprise allowed these companies to use the Dialing Platform to make millions of robocalls attempting to identify consumers in the market for a home security system. The lead generators then sold qualifying consumers' contact information to home security companies or other marketers, resulting in even more calls to the consumers. World Access also served as a home security lead generator, attempting to procure leads to sell directly to the Home Security Company by making its own lead generation calls on the Dialing Platform.

105.   Approximately 32.9 million of the outbound calls from the first quarter of 2014 were made to phone numbers listed on the National DNC Registry. In the first quarter of 2015, approximately 40.3 million of the outbound calls were made to phone number listed on the National Do Not Call Registry.

106.   Calls facilitated by the Red Hill and Jones Home Robocall Enterprises have led consumers to file more than 30,000 complaints with the FTC and its enforcement partners. Consumers complain of receiving robocalls from the Enterprises, and of receiving calls despite being on the National DNC Registry.

107.   Defendants helped the Enterprises' clients turn off automated features embedded in the dialing platform that would have prevented calls to numbers on the National Do Not Call Registry. They also helped their clients avoid dialing numbers associated with law enforcement agencies or known class action

plaintiffs. For example, in December 2013 Jones sent an e-mail message to the dialing platform provider with the subject "ftc staff dnc," attaching a list of every phone number at the Federal Trade Commission and asking for a report on whether calls had been made to those numbers.

### VIOLATIONS OF THE TELEMARKETING SALES RULE

108.   Defendants have provided substantial assistance or support to "telemarketer[s]" engaged in "telemarketing," as defined by the TSR, 16 C.F.R. § 310.2.

109.   In numerous instances since September 1, 2009, the Red Hill and Jones Home Robocall Enterprises' clients made outbound telephone calls that delivered prerecorded messages to induce the sale of goods or services when the persons to whom these telephone calls were made had not expressly agreed, in writing, to authorize the seller to place prerecorded calls to such person.

110.   In numerous instances, the Red Hill and Jones Home Robocall Enterprises' clients initiated telephone calls to telephone numbers on the National DNC Registry to induce the purchase of goods or services.

111.   In numerous instances, the Red Hill and Jones Home Robocall Enterprises' clients did not transmit or cause to be transmitted to caller identification services the telephone number and name of the telemarketer making the call, or the customer service number and name of the seller on whose behalf the telemarketer called.

112.   Defendants, including the Red Hill Robocall Enterprise Defendants and Jones Home Robocall Enterprise Defendants, knew, or consciously avoided knowing, that their clients were making the calls described in paragraphs 109 to 111.

113.   At various times between at least March 2009 and July 2015, Jones, Paik, Oakley, Fraley, Verallo, Hall, Kinaman, and Stansbury provided substantial assistance and support to the Red Hill Robocall Enterprise's clients by, among

other things, engaging in the Enterprise and its conduct as set forth herein, even though these Defendants knew or consciously avoided knowing that the Enterprises' clients were engaged in conduct that violated Section 310.4 of the TSR.

114.   At various times between at least May 2013 and July 2015, Yoshioka provided substantial assistance and support to the Red Hill Robocall Enterprise's clients by, among other things, engaging in the Enterprise and its conduct as set forth herein, even though Yoshioka knew or consciously avoided knowing that the Enterprise's clients were engaged in conduct that violated Section 310.4 of the TSR.

115.   Between at least March 2009 and July 2015, Savilo provided substantial assistance and support to the Red Hill Robocall Enterprise's clients by, among other things, engaging in the Enterprise and its conduct as set forth herein, even though Savilo knew or consciously avoided knowing that the Enterprise's clients were engaged in conduct that violated Section 310.4 of the TSR.

116.   Between at least June 2009 and July 2015, Data World provided substantial assistance and support to the Red Hill Robocall Enterprise's clients by, among other things, engaging in the Enterprise and its conduct as set forth herein, even though Data World knew or consciously avoided knowing that the Enterprise's clients were engaged in conduct that violated Section 310.4 of the TSR.

117.   Between at least September 2010 and January 2012, Velocity Information provided substantial assistance and support to the Red Hill Robocall Enterprise's clients by, among other things, engaging in the Enterprise and its conduct as set forth herein, even though Velocity Information knew or consciously avoided knowing that the Enterprise's clients were engaged in conduct that violated Section 310.4 of the TSR.

118.   Between at least March 2011 and July 2015, Local Lighthouse provided substantial assistance and support to the Red Hill Robocall Enterprise's clients by, among other things, engaging in the Enterprise and its conduct as set forth herein, even though Local Lighthouse knew or consciously avoided knowing that the Enterprise's clients were engaged in conduct that violated Section 310.4 of the TSR.

119.   Between at least September 2011 and July 2015, Allorey provided substantial assistance and support to the Red Hill Robocall Enterprise's clients by, among other things, engaging in the Enterprise and its conduct as set forth herein, even though Allorey knew or consciously avoided knowing that the Enterprise's clients were engaged in conduct that violated Section 310.4 of the TSR.

120.   Between at least December 2012 and July 2015, Secure Alliance provided substantial assistance and support to the Red Hill Robocall Enterprise's clients by, among other things, engaging in the Enterprise and its conduct as set forth herein, even though Secure Alliance knew or consciously avoided knowing that the Enterprise's clients were engaged in conduct that violated Section 310.4 of the TSR.

121.   Between at least June 2013 and July 2015, Dial Soft provided substantial assistance and support to the Red Hill Robocall Enterprise's clients by, among other things, engaging in the Enterprise and its conduct as set forth herein, even though Dial Soft knew or consciously avoided knowing that the Enterprise's clients were engaged in conduct that violated Section 310.4 of the TSR.

122.   Between at least October 2014 and July 2015, Digital Marketing provided substantial assistance and support to the Red Hill Robocall Enterprise's clients by, among other things, engaging in the Enterprise and its conduct as set forth herein, even though Digital Marketing knew or consciously avoided knowing that the Enterprise's clients were engaged in conduct that violated Section 310.4 of the TSR.

123.   At various times between at least July 2015 and May 2016, Audacity, World Access, Jones, Fraley, Verallo, Hall, Stansbury, and Yoshioka provided substantial assistance and support to the Jones Home Robocall Enterprise's clients by, among other things, engaging in the Enterprise and its conduct as set forth herein, even though these Defendants knew or consciously avoided knowing that the Enterprises' clients were engaged in conduct that violated Section 310.4 of the TSR.

**Count I**

**Assisting and Facilitating Abusive Telemarketing**

**Acts or Practices in Violation of the Telemarketing Sales Rule**

**(Against the Red Hill Robocall Enterprise Defendants)**

124.   In numerous instances, the Red Hill Robocall Enterprise Defendants have provided substantial assistance or support, as described in paragraphs 46 through 123, as applicable, to telemarketers whom Defendants knew or consciously avoided knowing were engaged in conduct that violated § 310.4 of the TSR.

125.   Defendants' substantial assistance or support, as alleged in Paragraph 124, above, violates the TSR, 16 C.F.R. § 310.3(b).

**Count II**

**Assisting and Facilitating Abusive Telemarketing**

**Acts or Practices in Violation of the Telemarketing Sales Rule**

**(Against the Jones Home Robocall Enterprise Defendants)**

126.   In numerous instances, the Jones Home Robocall Enterprise Defendants have provided substantial assistance or support, as described in paragraphs 46 through 123, as applicable, to telemarketers whom Defendants knew or consciously avoided knowing were engaged in conduct that violated § 310.4 of the TSR.

127.   Defendants' substantial assistance or support, as alleged in Paragraph 126, above, violates the TSR, 16 C.F.R. § 310.3(b).

## CONSUMER INJURY

128.   Consumers have suffered and will continue to suffer injury as a result of Defendants' violations of the TSR. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

129.   Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.

130.   Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), as modified by Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended, and as implemented by 16 C.F.R. § 1.98(d), authorizes this Court to award monetary civil penalties of up to $11,000 for each violation of the TSR on or before February 9, 2009, *see* 16 C.F.R. § 1.98(d) (2009), and up to $16,000 for each violation of the TSR after February 9, 2009, *see* 16 C.F.R. § 1.98(d) (2016). Defendants' violations of the TSR were committed with the knowledge required by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

131.   This Court, in the exercise of its equitable jurisdiction, may award ancillary relief to prevent and remedy any violation of the TSR and the FTC Act.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Sections 5(a), 5(m)(1)(A), and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a), 45(m)(1)(A), and 53(b), and the Court's own equitable powers, requests that this Court:

A.   Enter judgment against Defendants and in favor of Plaintiff for each violation alleged in this Complaint;

1    B.    Award Plaintiff monetary civil penalties from each Defendant for

2  every violation of the TSR;

3    C.    Enter a permanent injunction to prevent future violations of the TSR

4  and the FTC Act by Defendants;

5    D.    Award Plaintiff the costs of bringing this action, as well as such other

6  and additional relief as the Court may determine to be just and proper.

7

8                                   Respectfully submitted,

9                                   **David C. Shonka**
10                                  Acting General Counsel

11

12  Dated:   January 11, 2017        _____
13                                  **James E. Evans**, Va. Bar No. 83866
                                    **Ian L. Barlow**, D.C. Bar No. 998500
14                                  **Federal Trade Commission**
                                    600 Pennsylvania Ave. NW, CC-8528
15                                  Washington, DC 20580
                                    (202) 326-2026 / james.evans@ftc.gov
16                                  (202) 326-3120 / ibarlow@ftc.gov
                                    (202) 326-3395 (fax)
17

18
                                    **Thomas J. Syta**, Cal. Bar No. 116286
19                                  Local Counsel
                                    **Federal Trade Commission**
20                                  10877 Wilshire Boulevard, Suite 700
                                    Los Angeles, CA 90024
21                                  (310) 824-4343 / tsyta@ftc.gov
                                    (310) 824-4380 (fax)
22

23
                                    **Attorneys for Plaintiff**
24                                  **Federal Trade Commission**

25

26

27

28