# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# CIVIL MINUTES – GENERAL

Case No. SA CV 17-0058-DOC (JCGx)             Date: May 25, 2017

Title: FEDERAL TRADE COMMISSION V. AARON MICHAEL JONES, ET AL.

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Deborah Goltz | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**    **ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [79]**

Before the Court is Plaintiff the Federal Trade Commission's ("FTC" or "Plaintiff") Motion for Default Judgment ("Motion") (Dkt. 79). The Court finds this matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. Having reviewed the moving papers, the Court GRANTS Plaintiff's Motion.

## I. Background

### A. Facts

The following facts are drawn from the FTC's Complaint ("Compl.") (Dkt. 1) and Plaintiff's Motion.

Defendants Allorey, Inc. ("Allorey"); Audacity LLC ("Audacity"); Data World Technologies, Inc. ("Data World"); Dial Soft Technologies, Inc. ("Dial Soft"); Digital Marketing Solutions, Inc. ("Digital Marketing"); Savilo Support Services, Inc.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0058-DOC (JCGx)                                    Date: May 25, 2017

                                                                                                                                               Page 2

("Savilo"); Secure Alliance Corp. ("Secure Alliance"); Velocity Information Corp. ("Velocity Information"); and World Access Media ("World Access") (collectively, "Corporate Defendants") are corporations with exclusive rights to use or re-sell access to the "Dialing Platform"—a computer-based telephone dialing system that allows users to use computer technology to blast out large volumes of calls—for commercial purposes. *See id.* ¶¶ 3, 12—16, 18—21, 46. The Corporate Defendants sold the right to use the Dialing Platform to telemarketer clients. *Id.* ¶ 2. They also actively assisted their clients in using the Dialing Platform to make telemarketing robocalls (calls delivering prerecorded messages), including calls to consumers with phone numbers on the National Do Not Call Registry ("DNC Registry") and calls with "spoofed" or false caller ID information. *Id.* ¶¶ 2, 46. From at least March 2009 to May 2016, the Corporate Defendants assisted their telemarketer clients in making billions of robocalls to consumers. *Id.* ¶ 2.

In the first quarter of 2015, Allorey, Data World, Dial Soft, Digital Marketing, Savilo, Secure Alliance, Velocity Information (collectively, the "Red Hill Robocall Enterprise") assisted their clients in making more than 222 million outgoing telephone calls, most of which delivered prerecorded messages. Mot. at 11. Of these 222 million calls, approximately 40.3 million were made to phone numbers listed on the DNC Registry. *Id.*

Audacity and World Access (collectively, the "Jones Home Robocall Enterprise") assumed the operations of the Red Hill Robocall Enterprise after the latter broke up. *Id.* at 11. From June 1, 2015 to May 5, 2016, the Jones Home Robocall Enterprise assisted its clients in placing over 150 million calls to numbers listed on the DNC Registry. *Id.*

Defendant Aaron Michael Jones is an actual or *de facto* owner, officer, or manager of each of the Corporate Defendants. Compl. ¶ 22. Jones has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of each of the Corporate Defendants. *Id.* Jones has the financial ability to afford two leased Mercedes and a home leased for $25,000 per month. *See* Mot. at 2.

Jones and the Corporate Defendants knew or consciously avoided knowing that their clients were making telemarketing calls that violated the Telemarketing Sales Rules ("TSR"). Compl. ¶ 6. Jones and the Corporate Defendants purchased or licensed numbers that would display as caller IDs and resold them to their client telemarketers to use to make robocalls. Mot. at 7. They helped the clients turn off automated features preventing calls to numbers on the DNC Registry. *Id.* They also helped the clients avoid dialing numbers associated with law enforcement agencies. *Id.* Several of the defendants who have settled have testified that the corporations facilitated illegal telemarketing. Mot. at 2.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0058-DOC (JCGx)                                        Date: May 25, 2017

Page 3

### B.     Procedural History

On January 11, 2017, the FTC brought suit against Jones and the Corporate Defendants (along with other defendants who have settled) alleging that they assisted and facilitated abusive telemarketing acts or practices in violation of the TSR, 16 C.F.R. § 310.3(b). Compl. ¶¶ 124—27.

Defaults were entered by the Clerk of Court pursuant to Federal Rule of Civil Procedure 55(a) as to Jones on February 13, 2017 (Dkt. 44) and as to the Corporate Defendants on February 10, February 13, March 6, and March 9, 2017 (Dkts. 42, 44, 66, 74).

On April 10, 2017, the FTC filed the instant Motion against Jones and the Corporate Defendants, requesting civil penalties against Jones and permanent injunctions against Jones and the Corporate Defendants.

### II.     Legal Standard

Federal Rule of Civil Procedure 55(b) provides that the court may, in its discretion, order default judgment following the entry of default by the Clerk. Local Rule 55 sets forth procedural requirements that must be satisfied by a party moving for default judgment. Upon entry of default, the well-pleaded allegations of the complaint are taken as true, with the exception of allegations concerning the amount of damages. *See, e.g.*, *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). However, "necessary facts not contained in the pleading, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). Where the pleadings are insufficient, the court may require the moving party to produce evidence in support of the motion for default judgment. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

When deciding whether to enter default judgment, courts consider the seven *Eitel* factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0058-DOC (JCGx)                                                Date: May 25, 2017
                                                                                                                           Page 4

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

If a plaintiff seeks money damages, "[t]he plaintiff is required to provide evidence of its damages, and the damages sought must not be different in kind or amount from those set forth in the complaint." Fed. R. Civ. P. 54(c). "When 'proving-up' damages, admissible evidence (including witness testimony) supporting . . . damage calculations is usually required." *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011).

### III. Discussion

#### A. Procedural Requirements

The FTC has satisfied the requirements of Local Rules 55-1 and 55-2 and Federal Rule of Civil Procedure 55(b). Defaults were entered by the Clerk of Court pursuant to Federal Rule of Civil Procedure 55(a) as to Jones on February 13, 2017 (Dkt. 44) and as to the Corporate Defendants on February 10, February 13, March 6, and March 9, 2017 (Dkts. 42, 44, 66, 74). Jones and the Corporate Defendants are neither an infant nor incompetent nor in military service or otherwise exempt under the Soldiers' and Sailors' Civil Relief Act of 1940. *See generally* Compl. Having determined the FTC's procedural compliance, the Court turns to the substance of the FTC's Motion.

#### B. *Eitel* Factors

The Court considers each of the *Eitel* factors in turn.

##### 1. Possibility of Prejudice to Plaintiff

The first *Eitel* factor requires the Court to consider the harm to the FTC if the Court does not grant default judgment. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Absent default judgment in this case, the FTC would be denied the right to judicial resolution of the claims presented, and would be without other recourse for recovery. *See id.*; *Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005). Moreover, "the FTC would be prejudiced if the Court required it to continue litigating against defendants that refuse to participate in the litigation." *FTC v. A to Z Marketing, Inc.*, SACV 13-0919-DOC, slip op. at 3 (C.D. Cal. filed Oct. 17, 2014).

##### 2. Merits and Sufficiency of Complaint

Courts often consider the second and third *Eitel* factors together. *See PepsiCo*, 238 F. Supp. 2d at 1175. The second and third *Eitel* factors look to whether the plaintiff's

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0058-DOC (JCGx)　　　　　　　　　　　　　　　　　Date: May 25, 2017
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 5

complaint has sufficiently stated a claim for relief. In its analysis of the second and third *Eitel* factors, courts accept as true all well-pleaded allegations regarding liability. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

　　　　The FTC requests default judgment against defendants for violations of the TSR's prohibition against assisting and facilitating abusive telemarketing acts or practices, 16 C.F.R. §310.3(b). Compl. ¶¶ 124—27.

　　　　It is a violation of the TSR, 16 C.F.R. § 310.3(b), "for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§ 310.3(a), (c) or (d), or § 310.4" of the TSR.

　　　　Section 310.4(b)(1)(iii)(B) of the TSR prohibits sellers and telemarketers from initiating an outbound telephone call to numbers on the DNC Registry. Section 310.4(a)(8) of the TSR requires sellers and telemarketers to transmit or cause to be transmitted their caller ID information to any caller identification service used by the call recipient. Section 310.4(b)(1)(v) of the TSR prohibits sellers and telemarketers from initiating an outbound telephone call that delivers a prerecorded message to induce the purchase of any good or service unless the seller has obtained the call recipient's express agreement to the delivery of the message.

　　　　Here, the FTC alleged that Jones and the Corporate Defendants provided substantial assistance to telemarketers whom they knew, or consciously avoided knowing, were engaged in conduct that violated 16 C.F.R. § 310.4. Compl. ¶ 112. The FTC alleges that Defendants actively assisted their telemarketing clients in using the Dialing Platform to make billions of robocalls that delivered prerecorded messages to consumers with phone numbers on the DNC Registry, and calls with spoofed caller ID information. *Id*. ¶ 46.

　　　　The FTC alleged that Jones controlled all of the Corporate Defendants in this case. *Id*. ¶ 22. Further, Plaintiff alleges that Jones formulated, directed, controlled, had the authority to control, or participated in the unlawful telemarketing acts and practices of each of the Corporate Defendants. *Id*. Plaintiff alleges Jones also had the authority and responsibility to prevent or correct such practices. *Id*. Accordingly, the FTC has properly alleged facts that would supporting a find that Jones is liable for the unlawful telemarketing acts and practices carried out by the Corporate Defendants.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0058-DOC (JCGx)     Date: May 25, 2017
                                      Page 6

Therefore, the FTC has properly pleaded that Jones and the Corporate Defendants violated the TSR's prohibition against assisting and facilitating abusive telemarketing acts or practices.

### 3.     Sum of Money at Stake

The fourth *Eitel* factor requires the court to balance the amount of money at stake against the seriousness of the defendant's conduct. "Default judgment is disfavored where the sum of the money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014).

Here, the FTC seeks entry of a civil penalty judgment of $2.7 million against Jones, which is equal to the combined revenue of Allorey (during the first quarter of 2014) and Digital Marketing (during the first quarter of 2015). Mot. at 19. This is a significant amount of money. However, the FTC has properly pleaded all of its claims, and the amount of money at stake is appropriate considering the millions of violations and the potential fines for each of these violations. The penalty would average out to less than $3 per violation, when the FTC could have sought up to $16,000 per violation according to 15 U.S.C. § 45, as modified by 16 C.F.R. § 1.98 (2009).

Therefore, the fourth *Eitel* factor weighs in favor of a grant of default judgment.

### 4.     Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor requires the court to consider the possibility of dispute as to material facts in the case. Where a plaintiff's complaint is well-pleaded and the defendants make no effort to properly respond, the likelihood of disputed facts is very low. *See Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010). "Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists." *Elektra Entm't Grp.*, 226 F.R.D. at 393. Accordingly, the fifth *Eitel* factor weighs in favor of default judgment.

### 5.     Possibility of Excusable Neglect

The sixth *Eitel* factor considers the possibility that a defendant's default resulted from excusable neglect. *Vogel*, 992 F. Supp. 2d at 1013; *see also Eitel*, 782 F.2d at 1471–72. Due process requires that interested parties be given notice of the pendency of the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0058-DOC (JCGx)                                                    Date: May 25, 2017
                                                                                                                     Page 7

action and be afforded an opportunity to present its objections before a final judgment is rendered. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, it is unlikely that there is excusable neglect because Jones and the Corporate Defendants were properly served (Dkts. 35—40, 45—48, 51, 58—59, 61). Although Jones was in communication with the FTC about the proceedings after being served with the complaint, Jones still has not moved to vacate his default or answered the complaint. Mot. at 20.

Accordingly, this factor weighs in favor of the entry of default judgment.

### 6. Policy Favoring Decision on the Merits

The seventh *Eitel* factor requires the court to consider the strong judicial policy favoring decisions on the merits before granting default judgment. Whenever reasonably possible, cases should be decided upon their merits. *Eitel*, 782 F.2d at 1472; *PepsiCo*, 238 F. Supp. 2d at 1177. However, the policy favoring decisions on the merits does not prevent a court from entering judgment where a defendant refuses to respond. *Id.* at 1177. Here, the Court is unable to make a decision on the merits because Jones and the Corporate Defendants have not participated in the proceedings: they have neither filed their answers or opposed to the entry of defaults. Accordingly, the seventh *Eitel* factor does not preclude the Court from entering default judgment against Jones and Corporate Defendants.

### 7. Conclusion

Taken together, the seven *Eitel* factors weigh in favor of granting default judgment against Jones and Corporate Defendants.

### C. Damages and Relief Sought

The FTC seeks civil penalties against Jones and permanent injunctions against Jones and the Corporate Defendants. Mot. at 1. Pursuant to Fed. R. Civ. P. 8(a)(3), a plaintiff's demand for relief must be specific and a plaintiff "must 'prove up' the amount of damages." *Elektra Entm't Group, Inc. v. Bryant*, No. CV 03-6381GAF (JTLx), 2004 WL 783123, at *5 (C.D. Cal. Feb. 13, 2004). Under Rule 54(c), relief sought in a motion for entry of default judgment is limited to that identified in the complaint. Fed R. Civ. P. 54(c).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0058-DOC (JCGx)                                                   Date: May 25, 2017
                                                                                                                            Page 8

### 1. Injunctive Relief

The FTC seeks permanent injunctions enjoining Jones and the Corporate Defendants' unlawful conduct. The Proposed Injunctions (Dkts. 79-15, 79-16) against Jones and the Corporate Defendants are essentially identical. The proposed injunctions permanently enjoin all defendants from (1) engaging in, or assisting others to engage, or holding interests in businesses engaged in Telemarketing; and (2) initiating, causing others to initiate, or assisting others in initiating any telephone calls that plays or delivers a prerecorded message (robocalls), or call to any telephone number listed on the DNC Registry. *See* Proposed Injunctions.

As set forth above, the FTC has shown that it is entitled to judgment on its TSR claim. A district court may grant a permanent injunction enjoining defendants from violating any provision of law enforced by the FTC after weighing the equities and after proper proof that such action would be in the public interest. 15 U.S.C. § 53. In granting an injunction in this context, courts are to consider (1) the reasonable relationship between the remedy selected and the unlawful practices found to exist, and (2) the likelihood of further, additional violations. *Sears, Roebuck & Co. v. FTC*, 676 F.2d 385, 391—92 (9th Cir. 1982).

#### a. Reasonable Relationship

Here, the remedy the FTC seeks—enjoining Jones and the Corporate Defendants from telemarketing—is reasonably related to the defendants' assistance to telemarketers in placing calls in violation of 16 C.F.R. §310.4.

As to the scope of injunctive relief, generally, an injunction must be narrowly tailored to address only the specific violations by defendants, rather than enjoin all possible breaches of the law. *See Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004). However, the FTC "is not limited to prohibiting the illegal practice in the precise form in which it is found to have existed in the past." *FTC v. Grant Connect, LLC*, 763 F.3d 1094, 1105 (9th Cir. 2014) (quoting *FTC v. Ruberoid Co.*, 343 U.S. 470, 473 (1952)). Rather, violators of provisions enforced by the FTC "must expect some fencing in." *Id.* (quoting *FTC v. Nat'l Lead Co.*, 352 U.S. 419, 431 (1957)). Therefore, injunctive relief may be framed "broadly enough to prevent respondents from engaging in similarly illegal practices in future advertisements." *Id.* In some cases, district courts have found a complete ban on certain acts or practices, such as telemarketing, to be the appropriate injunctive relief. *See, e.g.*, *FTC v. John Beck Amazing Profits LLC*, 888 F. Supp. 2d 1006, 1013 (C.D. Cal. 2012) ("[A] less-restrictive, product-specific permanent injunction . . .

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0058-DOC (JCGx)                                                        Date: May 25, 2017
                                                                                                              Page 9

will not be sufficient to avoid recurring violations in light of [defendant's] long history of blatantly disregarding the law.").

The scope of the injunctions here is not narrowly tailored to the specific violations that defendants allegedly committed. Rather they broadly enjoin defendants from conducting any telemarketing business (including potentially lawful practices). However, the court is satisfied that such measures are appropriate in order to safeguard against defendants' "recurring violations in light of [their] long history of blatantly disregarding" telemarketing regulations. *See id.*

### b. Likelihood of Future Violations

Concerns regarding the likelihood of future violations are influenced by two factors: "the deliberateness and seriousness of the present violation, and the violator's past record with respect to unfair advertising practices." *Sears*, 676 F.2d at 392 (9th Cir. 1982).

Here, defendants' present violations are deliberate. Defendants knew or consciously avoided knowing that their clients were making telemarketing calls that violated the TSR. Compl. ¶ 6. Moreover, defendants helped their clients avoid detection by providing them with the numbers associated with law enforcement agencies or known class action plaintiffs. *Id*. Defendants' violations are of serious magnitude, involving billions of unlawful calls to consumers. *Id*. ¶ 2. Therefore, given Jones' lengthy history of unlawful telemarketing practices, including repeatedly opening enterprises to carry out business contrary to the TSR, the proposed injunctive relief banning him from engaging or assisting others in engaging in telemarketing is warranted.

Accordingly, the Court finds that the FTC is entitled to the requested permanent injunctions. The public interest is served by these injunctions because consumers have suffered and will continue to suffer injury as a result of defendants' violations of the TSR absent injunctive relief.

Therefore, the Court GRANTS the FTC's request for permanent injunctions.

### 2. Civil Penalty

The FTC also contends that it is entitled to a civil penalty against Jones in the amount of $2.7 million. Mot. at 1.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-0058-DOC (JCGx)                                            Date: May 25, 2017
                                                                                                                                                     Page 10

Under 15 U.S.C. § 45, as modified by 16 C.F.R. § 1.98 (2009), the FTC can recover civil penalties in a district court of the United States against defendants who knowingly violated any relevant rule respecting unfair or deceptive acts or practices.

In this case, Jones, through his businesses, allegedly assisted telemarketers in placing millions of calls in violation of 16 C.F.R. §310.3(b). Jones was a highly culpable ringleader of the robocall enterprises. Compl. ¶ 10. Accordingly, the requested $2.7 million in civil penalties is appropriate. The FTC can recover more than $10,000 for each violation. 15 U.S.C. § 45. However, a total penalty of $2.7 million averages out at less than $3 per violation. Jones' history of prior conduct relating to unlawful telemarketing practices also indicates a significant fine is appropriate, especially as he continued to engage in conduct violating the TSR even after learning that he was under FTC investigation. Mot. at 24.

Therefore, the Court AWARDS the FTC a civil penalty of $2.7 million against Jones.

## IV. DISPOSITION

For the foregoing reasons, the Court GRANTS the FTC's Motion and request for permanent injunctions, and AWARDS a civil penalty in the amount of $2.7 million against Jones and for the FTC.

The FTC shall submit a proposed judgment on or before **June 2, 2017**.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                                                                            Initials of Deputy Clerk: djg
CIVIL-GEN